# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 1, 2026

Lyle W. Cayce
Clerk

———————

No. 25-60414

———————

Christopher Dilworth,

*Plaintiff—Appellant*,

*versus*

Landon Tucker,

*Defendant—Appellee*.

———————————————————

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:24-CV-58

———————————————————

Before Elrod, *Chief Judge*, and Ho and Ramirez, *Circuit Judges*.
Irma Carrillo Ramirez, *Circuit Judge*:

Christopher Dilworth appeals a summary judgment dismissing his false-arrest and excessive-force claims based on qualified immunity. We AFFIRM.

I

James Frawley owned real property in Corinth, Mississippi. Between January and April of 2021, the Corinth Police Department had been called eight times to investigate reports of suspicious activity at the property, and it had arrested several individuals for trespassing. When Frawley went to jail

for various offenses in April of 2021, he asked the police "for extra patrol" at the property and to "remove anybody" who was there.

Frawley sold the property to his bail bondsman, Christopher Dilworth, on August 1, 2021. Dilworth recorded a corresponding deed on April 5, 2021.

On April 8, 2021, Officer Landon Tucker of the Corinth Police Department went to the property, with which he was "very familiar," in response to another suspicious activity call. He saw Dilworth walking around the front of the property and began interacting with him. Dilworth recorded part of the interaction on a cell phone.[1]

Dilworth asked, "Can I help you?" Officer Tucker responded, "I was wondering if I could help you." Dilworth replied, "I don't know, can you?" When Officer Tucker asked what Dilworth "was doing," Dilworth replied, "I'm looking around." Believing that Frawley still owned the property, Officer Tucker said, "This isn't your house," but Dilworth did not respond.

At some point, Officer Tucker told Dilworth to "come here" and to "stop," but Dilworth began "running away" toward the front door of the home. Officer Tucker stepped in front of Dilworth and tried to grab him, but Officer Tucker somehow "ended up in a thorn bush" nearby. He told Dilworth to get on the ground, and when Dilworth did not, Officer Tucker tased and handcuffed him. Over a minute after he had been placed in handcuffs, Dilworth told Officer Tucker that he was the actual owner of the property. Officer Tucker responded, "Nah, this isn't your house, dude."

---

[1] Although the entire interaction is audible, it is not shown completely because of the angle at which the phone was held, and it appears the cell phone was dropped on the ground at some point.

When Dilworth continued to claim that it was "his house," Officer Tucker asked, "Since when?" Dilworth did not respond.

Dilworth was charged with trespassing, resisting arrest, and disorderly conduct. The trespass charge was dismissed upon confirmation that Dilworth owned the property. The other charges were "retired" to the file, subject to Dilworth not committing another crime for two years.

Dilworth sued Officer Tucker in his individual and official capacities under 42 U.S.C. § 1983 for false arrest and excessive force in state court. After removing the matter to federal court, Officer Tucker moved for summary judgment. He argued, in relevant part, that he was entitled to qualified immunity. After Dilworth responded without submitting any evidence, the district court granted summary judgment and dismissed Dilworth's claims, concluding that Officer Tucker was entitled to qualified immunity because Dilworth failed to show a triable issue concerning the existence of any constitutional violation.[2] Dilworth now appeals.

II

This court reviews a district court's decision to grant summary judgment based on qualified immunity *de novo*. *Ramirez v. Granado*, 163 F.4th 204, 208 (5th Cir. 2025). "A good-faith qualified immunity defense alters the usual summary judgment burden of proof." *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019). The plaintiff bears the burden of "rebut[ting]

---

[2] Officer Tucker also argued that Dilworth's claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and he sought summary judgment on Dilworth's municipal-liability claims. While the district court did not analyze the applicability of *Heck*, it dismissed the municipal-liability claims. Dilworth has not maintained those claims on appeal. *See Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 343 n.5 (5th Cir. 2022) (noting that a party "forfeits . . . arguments by failing to adequately brief them both in district court and on appeal").

the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Baker v. Coburn*, 68 F.4th 240, 244 (5th Cir. 2023). A "plaintiff need not present 'absolute proof,' but must offer more than 'mere allegations.'" *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (quoting *Reese v. Anderson*, 926 F.2d 494, 499 (5th Cir. 1991)).

## III

"In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry." *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). First, we ask "whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right[.]'" *Id.* at 655–56 (alterations in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, we ask "whether the right in question was 'clearly established' at the time of the violation." *Id.* at 656 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "Courts may address the two prongs in any order, and defendants are entitled to qualified immunity if the plaintiff fails either prong." *Wetherbe v. Tex. Tech Univ. Sys.*, 138 F.4th 296, 301 (5th Cir. 2025) (footnotes omitted), *cert. denied sub nom.*, *Wetherbe v. TX Tech Univ. Sys.*, No. 25-530, 2026 WL 79851 (U.S. Jan. 12, 2026). We resolve this case on the second prong.[3]

For a right to be clearly established, the "constitutional question" must be "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). There are three ways to demonstrate that the "constitutional question" is "beyond debate." *See Ashcroft*, 563 U.S. at 741.[4] First, a plaintiff may

---

[3] We pretermit discussion of whether Dilworth forfeited this issue by failing to adequately brief it below and on appeal. *See Roe*, 53 F.4th at 343 n.5.

[4] Although this court said in *Batyukova* that "[t]here are two ways to demonstrate clearly established law[,]" 994 F.3d at 726, it has also acknowledged the "robust

"identify" controlling authority "where an officer acting under similar circumstances . . . was held to have violated the [Constitution]." *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 337 (5th Cir. 2020) (first alteration in original) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018)). Second, in the "absen[ce of] controlling authority[,]" a plaintiff may instead identify "a robust 'consensus of cases of persuasive authority'" in which officers acting under similar circumstances were found to have violated the Constitution. *Ashcroft*, 563 U.S. at 742 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). Third, a plaintiff may demonstrate "the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021) (quoting *Wesby*, 583 U.S. at 64). In that "rare 'obvious case,'" *id.* (quoting *Wesby*, 583 U.S. at 64), "a plaintiff need not identify an on-point case to overcome qualified immunity[,]" *Salazar v. Molina*, 37 F.4th 278, 285 (5th Cir. 2022) (quoting *Hope*, 536 U.S. at 741); *see also Taylor v. Riojas*, 592 U.S. 7, 8–9 (2020).[5]

In considering whether "controlling authority" clearly establishes the law in Dilworth's favor, *see Ashcroft*, 563 U.S. at 742,[6] "[t]he dispositive

---

consensus" approach, *see, e.g.*, *Lewis v. Delgado*, 163 F.4th 926, 930 (5th Cir. 2026). Here, we merely distill our caselaw to account for all three ways in which a plaintiff may demonstrate clearly established law.

[5] And to state the obvious, these three standards for determining whether a right has been clearly established are the same, regardless of which provision of the Constitution is alleged to have been violated.

[6] Dilworth does not allege or attempt to show that this is an obvious case or that a "robust 'consensus of cases of persuasive authority'" exists, so we consider only whether "controlling authority" clearly establishes the law in his favor. *See Ashcroft*, 563 U.S. at 742 (quoting *Wilson*, 526 U.S. at 617). He must demonstrate that "existing precedent 'squarely governs' the specific facts at issue." *See Salazar*, 37 F.4th at 286 (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)).

question is 'whether the violative nature of *particular* conduct is clearly established,'" *see Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft*, 563 U.S. at 742). Dilworth must "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *See Joseph*, 981 F.3d at 337 (alteration in original) (quoting *Wesby*, 583 U.S. at 64). And he has to "explain[] why the case clearly proscribed the conduct of that individual officer." *Id.* at 345. "The Supreme Court strictly enforces" this "requirement," as does this court. *Id.* at 346. "At bottom, a plaintiff must show that 'no reasonable officer could have believed his actions were proper.'" *Perniciaro v. Lea*, 901 F.3d 241, 255 (5th Cir. 2018) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)).

A

As to his false-arrest claim, Dilworth raises no argument that Officer Tucker violated clearly established law by arresting him. And he identifies no case clearly establishing that, under these circumstances, "no reasonable officer could have believed," *see id.* (quoting *Callahan*, 623 F.3d at 253), that Officer Tucker "arguably" had probable cause to arrest him, *see Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001) ("[T]here must not even 'arguably' be probable cause for the search and arrest for immunity to be lost." (alteration in original) (quoting *Hart v. O'Brien*, 127 F.3d 424, 444 (5th Cir. 1997), *abrogated on other grounds by Kalina v. Fletcher*, 522 U.S. 118 (1997))).

B

Dilworth claims that Officer Tucker used excessive force while trying to arrest Dilworth when he "put [his] hands on" Dilworth, tackled him, and tased him. He cites *Coon v. Ledbetter* for the proposition that the "[u]se of excessive force in making an arrest violates clearly established rights, and the doctrine of qualified immunity therefore does not shield an officer who uses excessive force." 780 F.2d 1158, 1164 (5th Cir. 1986). This "[a]bstract or

general statement[] . . . untethered to analogous or near-analogous facts [is] not sufficient to establish a right 'clearly' in a given context . . . ." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015).

Dilworth also cites various distinguishable, unpublished cases from this court and others. *See Doss v. Helpenstell*, 626 F. App'x 453 (5th Cir. 2015); *Harper v. Rose*, No. 1:09-CV-153-TC, 2012 WL 1150463 (D. Utah Apr. 5, 2012); *Pinedo v. City of Dallas*, No. 3:14-CV-0958-D, 2016 WL 147893 (N.D. Tex. Jan. 13, 2016); *LaFleur v. Sheriff's Dep't of Calcasieu Par.*, No. 2:10-1537, 2011 WL 5280798 (W.D. La. Nov. 2, 2011). Holding aside that, generally, unpublished opinions by themselves—let alone district court cases—"cannot . . . clearly establish[] law for qualified immunity analysis," *Marks v. Hudson*, 933 F.3d 481, 486 (5th Cir. 2019), each case Dilworth relies upon is inapposite. *Doss* contemplated use of force during a stop while the suspect remained in the vehicle and "did nothing to demonstrate hostile intent." 626 F. App'x at 455, 459. *Harper* involved officers repeatedly tasing a suspect who was only "passively resisting" during a traffic stop. 2012 WL 1150463 at *2–3. *Pinedo* concerned a fact question as to whether an individual was tased after being shot while lying on the ground handcuffed, and the evidence plausibly established that he "posed a threat of serious harm" to himself or the officer. 2016 WL 147893, at *6–8. Finally, *LaFleur* entailed a factual dispute as to whether an individual was resisting arrest and an alleged "attack" by multiple officers. 2011 WL 5280798 at *1, *3–6. *LaFleur* did not even take up the clearly established prong. *Id.* None of these circumstances are present in this case.

Nor does the published authority Dilworth cites clearly establish "the violative nature of" Officer Tucker's "particular conduct." *See Mullenix*, 577 U.S. at 12 (emphasis omitted) (quoting *Ashcroft*, 563 U.S. at 742). Each case Dilworth cites is distinguishable in key aspects. *Cf. Ducksworth v. Landrum*, 62 F.4th 209, 213 (5th Cir. 2023) (dismissing appeal from denial of

qualified immunity for lack of jurisdiction); *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (holding that the law was clearly established that "forcefully slam[ming]" a suspect's "face into a vehicle while she was restrained and subdued" constitutes a Fourth Amendment violation); *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736–40 (5th Cir. 2000) (reversing grant of qualified immunity where plaintiff submitted evidence that created genuine issues of material fact regarding whether a suspect was lawfully stopped and arrested and attempted to flee).

Because Dilworth failed to carry his burden to show that Officer Tucker violated clearly established law in his use of force, Officer Tucker is entitled to qualified immunity. *See Wetherbe*, 138 F.4th at 301.

## IV

The judgment of the district court is AFFIRMED.